STEAM-GAUGE & LANTERN Co. *et al. v.* KENNEDY *et al.*

(*Circuit Court, N. D. New York.* December 23, 1889.)

1. PATENTS FOR INVENTIONS—ANTICIPATIONS—LANTERNS.
Claim 1 of patent No. 244,944 to Joseph B. Stetson, dated July 26, 1881, for assembled devices adapted to "tubular lanterns," for detaching the glass globe of a lantern from the frame, with those whereby the globe is raised and lowered integrally with the deflecting plate and perforated plate, and steadied laterally, has a vertically adjustable deflecting plate above the globe, carrying a spring attached to it, adapted to hold or release the globe; connecting rods, which extend from the deflecting plate to the perforated plate beneath the globe, and unite them rigidly, for the purpose of holding the two plates and the globe integrally together when the globe is raised from the lamp; and guides, which are rigidly attached to the perforated plate, and embrace the sides of the frame, for the purpose of steadying the plates and globe when raised and lowered. Irwin's patent, dated May 23, 1871, allows the globe to be detached by a spring attached to the deflecting plate, but not to be raised above the lamp, and, when detached, the plates become separated. Ford's patent, dated July 25, 1871, allows the globe to be raised integrally with the plates above the lamp, by means of rigidly attached connecting rods, but the globe cannot be removed from the frame. Betts' patent, dated August 26, 1879, has similar guides for lateral support. Colony's patent, dated February 12, 1878, allows the globe to be raised integrally with the plates by wires carried by the perforated plate and hooking into the deflecting plate; and, by unhooking the wires, the globe can be removed from the frame, but the two plates become detached from each other. *Held,* that the claim of Stetson was not anticipated by any of these patents, and that the improvements involved invention.

2. SAME.
The second claim of Stetson's patent has all the parts of the first, except that there is no spring in the deflecting plate to release the globe. *Held,* that it was anticipated by the Ford and Betts patents.

3. SAME—INFRINGEMENT.
Defendant's lantern differs from that of Stetson's first claim only in that the vertical rods connecting the two plates are made in two parts, so that they can be disconnected at a point midway between the two plates. *Held* an infringement.

In Equity.
*E. S. Jenney*, for complainants.
*George H. Lothrop* and *Wells W. Leggett*, for defendants.

WALLACE, J. This suit is brought upon letters patent granted to Joseph B. Stetson, assignor, No. 244,944, dated July 26, 1881, for a lantern. The complainants, as owners of this patent, allege that the defendants infringe it by the sale of lanterns manufactured by the Buhl Stamping Company, of Detroit. The only claims in controversy are the first and second. These claims are as follows:

"(1) In a lantern having a globe-supporting frame, the vertically adjustable plate, C, carrying a spring, E, adapted to hold or release the globe, as desired, in combination with the globe, the perforated plate on which it rests, the connecting rods, F F, serving to unite the top and bottom plates, and suitable guides adapted to give lateral support to the lower part of the globe, substantially as set forth. (2) The tubular frame, D D', and the globe, G, in combination with the plates, C p, the connecting rods, F, and the guides, H, whereby said globe is raised and lowered by a suitable lever, and guided or steadied laterally in its movements, for the purpose set forth."

The defendants insist that the two claims in controversy are invalid, for want of patentable novelty; and, also, that, if the claims are given the limited interpretation they should receive, in view of the prior state of the art, they are not infringed by the lantern sold by them. These claims were considered by Judge NELSON in a suit in the circuit court for the district of Massachusetts, (*Lantern Co.* v. *Rogers*, 29 Fed. Rep. 453,) and their novelty was sustained. Several prior patents, which were not commented upon in the opinion in that case, and apparently were not before the court, have been introduced by the defendants, and are relied upon by them as important. Among these are the patent to Shannon of September 23, 1856, and the patent to Balch of August 29, 1871. In view of these patents, and of some others, which were not before the court in the former case, it has seemed necessary to consider the questions presented by the defense *de novo.* The improvements which are the subject of the patent are more especially adapted to the class of lanterns which are commonly known as "tubular lanterns." Such lanterns have a frame, consisting of tubular supports, extending upwards, from the base of the lantern, on opposite sides of the globe, and across the top of the globe; and the globe rests upon a perforated plate, through which air is admitted into the globe, and is held in place by pressure downward upon its top of a spring clasp or an annular holder attached to a deflecting plate. The deflecting plate is attached, either rigidly or so as to be vertically adjustable, to the tubular frame. One form of such lanterns is shown in the patent to Irwin of May 23, 1871, and another in the patent to Ford of July 25, 1871. In lanterns like Irwin's, the globe is removed by actuating the spring clasp attached to the deflecting plate, and, when thus removed, is detached from the perforated plate as well as the deflecting plate; and in those like Ford's the deflecting plate and perforated plate are rigidly connected with the globe, and the globe can be raised

above the lamp by raising the deflecting plate. In the Irwin class the globe can be removed from the frame of the lantern, but only by detaching the several parts, and it cannot be lifted above the lamp; and in the Ford class it cannot be removed from the frame; but can be lifted, with the other parts, integrally above the lamp, and lowered again. It is desirable to unite in the same lantern devices which will permit the globe to be removed, and also to be raised and lowered integrally with the perforated plate, without being removed from the frame. A globe that can be removed can be more conveniently cleaned, and can be readily replaced when broken, while one that can be raised and lowered admits of the more convenient lighting and trimming of the lamp; and when the globe is removed, unless the perforated plate remains attached to the deflecting plate, it is liable to fall away from the lamp, and has to be replaced if it gets injured or lost, as may sometimes happen. It is also desirable that when the globe of the lantern is raised and lowered the deflecting plate be maintained in such a relation of parallelism to the sides of the frame that when lowered it will resume its normal position with accuracy, because otherwise the mouth of the lamp is liable to become injured in returning the perforated plate to its seat. The lantern of the complainants' patent unites these devices. This has been effected by changes in details of construction in the devices found in one or the other of the lanterns of Ford and Irwin, and by adding some further devices. The specification states that the new parts added "are designated by heavy black lines in the several figures." These lines show connecting rods which hold the deflecting plate, and either the perforated plate or the globe, in a rigid connection with it, and guides which are rigidly attached to the perforated plate, and embrace the tubular sides of the lantern frame. The patentee says, in the specification:

"I extend wires, F F, or other suitable connections, down from the disk, C, (the deflecting plate,) to the lower part of the globe, G, which they encircle, as indicated in Fig. 2; or I unite these wires, as shown in Fig. 1, to lateral extensions or wings, P, of the perforated plate, P, so that said plate shall move, with the globe, up and down. I also provide lateral guides, H h, to give a steady movement, and to hold the globe firmly when in position for use. Such guides are preferably of wire, secured to the perforated plate or to its wings, P, and passing around the air-tube, D. * * * It is obvious that vertical rods passing through wings, P, would form suitable guides, or that projecting wires might enter grooves in the inner faces of the tubes, D D, for this purpose."

The first claim is for a lantern which, besides the globe and the supporting frame, has (1) the vertically adjustable deflecting plate, carrying a spring attached to it, adapted to hold or release the globe; (2) connecting rods which extend from the deflecting plate to the perforated plate, and unite them rigidly; and, (3) guides which are rigidly attached to the perforated plate, and embrace the sides of the frame, or move in grooves in the sides, or consist of loops on the sides, to receive the connecting rods. The office of the connecting rods is to hold the globe, the deflecting plate, and the perforated plate integrally together when the globe is raised from the lamp. The office of the guides is to steady

these parts laterally in their upward and downward movements. This claim is for the assembled devices which contribute to the detachability of the globe from the lantern frame with those whereby it is raised and lowered integrally with the deflecting plate and perforated plate, and steadied laterally. The lantern of the second claim is a tubular lantern, having the same connecting rods, guides which embrace the tubular sides, and the vertically adjustable deflecting plate, but having no spring in the deflecting plate to release the globe. This claim is for a combination of those devices, only, whereby the globe is raised and lowered integrally with the deflecting plate and the perforated plate, and steadied laterally during the operation. The first claim is not anticipated by any of the prior patents, and, with some hesitation, the conclusion is reached that the improvements included in it involved invention, and were something more than the aggregation together of old devices, and their adaptation to each other, by the ordinary skill of the mechanic.

An examination of the patents of Irwin and Ford show that what Stetson really did was to assemble together the devices found in one or the other of these lanterns, add the guides, and reorganize the parts so that they would efficiently reinforce each other in their new association. The real question in the case is whether this was such an obvious thing to do that it was not invention. Stetson was not the first to perceive the advantages which would ensue by embodying the removable globe of Irwin and the adjustable globe of Ford in a lantern of the same general type. This appears by the patent to Colony of February 12, 1878; and the lantern of this patent is the nearest advance to that of Stetson shown by any of the prior patents in the record. That lantern has a vertically adjustable deflecting plate, and wires carried by the perforated plate, which measurably perform the work of the spring and the connecting rods of Stetson. These wires extend, one on each side of the globe, to a depending ring attached to the deflecting plate, and their ends hook over the ring so that the perforated plate, the globe, and the deflecting plate can be raised and lowered integrally, and by unhooking the wires the globe can be removed from the frame. In this lantern, however, when the globe is removed, the deflecting plate and the perforated plate are detached from each other. The wires are not rods rigidly connected with the two plates. There are no guides in this lantern; and it is probably incorrect to treat the wires extending from the perforated plate as springs. More accurately, they are hooks; and they perform no other function than those performed by the hooks shown in the lantern of the patent to Balch of August 29, 1871. Practically, the lantern of Colony is but a slight improvement upon the lantern of Balch, although in the lantern of Balch the globe cannot be removed from the frame except integrally with the perforated plate. No one, in comparing this lantern with the lantern of Stetson would doubt for a moment that the latter is a more efficient and convenient one, and that there are essential differences in the organization of the parts that are common to both.

Turning now to the several elements of the claim, it appears that, while some of them are old, some of them are not shown separately in any of the prior patents. The vertically adjustable plate, but differing somewhat in details of construction, was old, as is shown by the patent to Ford, the patent to Balch, and the patent to Colony; but none of these patents show such a plate carrying a spring adapted to hold or release the globe of the lantern, unless the wire hooks of Colony are treated as springs, and, if they are springs, they are carried by the perforated plate instead of the deflecting plate. The connecting rods serving to unite the deflecting plate and the perforated plate in the lantern of the patent are shown in the patent to Ford; and, although, instead of being connected with the deflecting plate, they are connected with a depending ring, this, probably, is an immaterial difference. The guides adapted to give lateral support to the lower part of the globe are shown in the patent to Betts of August 26, 1879; but they do not support it through their attachment to the perforated plate. Merely bringing together in one structure the two old lanterns of Irwin and Ford could not support a patent; and, upon first impression, it would not seem to rise to the dignity of invention to put the spring of Irwin into the vertically adjustable deflecting plate of Ford, and add the guides. Yet the changes made in the deflecting plate of Ford, although they seem simple enough now, gave it a new function, as a detachable globe-holder, which is of prime practical value, and were those that Colony was unable to make. The most persuasive evidence that these changes involved something more than the mere mechanical adaptation of the parts to perform their new work is found in the extrinsic history of the invention. One of the complainants was the owner of the patents to Irwin, Ford, Balch, and Colony, and was extensively engaged in the manufacture of lanterns, when Stetson's patent was brought to the attention of its officers. They immediately obtained the control of the patent, commenced making the lantern, and introduced it to the trade. The Stetson lantern immediately commended itself to the trade, and soon almost wholly superseded the sale of the old forms of lanterns. The record shows that other manufacturers sought to appropriate the improvements, and were willing to pay the price of litigation for the privilege of using them; and the real defendants in this case, the manufacturers of the lantern sold by the defendants, instead of attempting to improve, by some new departure, on the lanterns of Irwin and Ford, the patents for which have expired, have adopted Stetson's improvements. The lanterns sold by the defendants are in all details the lantern of the first claim of the patent, except that the connecting rods which unite the deflecting plate to the perforated plate are made in two separate parts, so that they can be disconnected at a point about midway between the two plates. They unite the two plates, however, in a rigid connection when the globe is not removed from the frame.

The lantern of the second claim cannot be essentially distinguished from the lantern of the Ford patent. The addition of the guides, though useful, was not invention. Their office and function is the same as in that of the lantern of the patent to Betts. It is doubtful whether they

contribute anything to the lifting devices of the lantern which is not equally well accomplished by the loops in the lanterns of Colony, Ford, and Balch, which control the vertical movement of the deflecting plate in those lanterns.

The patent to Shannon, and the other patents relied upon by the defendants which were not in the case before Judge NELSON, have not been specifically referred to, with the exception of the patent to Balch, because they do not seem to be of any value in considering the questions which have been discussed. Upon filing a proper disclaimer of the second claim, a decree may be entered by the complainant, without costs, for an injunction and an accounting.